UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **KEVIN TRAHAN** | * | **CIVIL ACTION NO.  18-1262** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **METROPOLITAN LIFE INSURANCE COMPANY** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted, or alternatively, motion for summary judgment [doc. # 5] filed by defendant, Metropolitan Life Insurance Company ("MetLife").  Also before the court are three motions filed by plaintiff Kevin Trahan:  1) a motion to strike defendant's exhibit [doc. #12]; 2) a motion to compel defendant to produce a copy of the administrative record [doc. # 22]; and 3) a motion to deem plaintiff's reply brief also to be a supplemental opposition memorandum [doc. 23].  For reasons detailed below, it is recommended that defendant's motion to dismiss/summary judgment be DENIED.  Moreover, it is ORDERED that plaintiff's motions are DENIED.

### Background

On September 25, 2018, Kevin Trahan filed the instant suit against MetLife for its alleged arbitrary and wrongful failure to pay benefits under a long term disability policy that Trahan subscribed to during his employment with Performance Entergy and Quanta Services, Inc. (Compl.).  Trahan seeks resulting damages, including penalties, reasonable attorney's fees, and

legal interest. *Id*.

On October 31, 2018, MetLife filed the instant motion to dismiss for failure to state a claim upon which relief can be granted, or alternatively for summary judgment, on the basis that Trahan purportedly failed to exhaust administrative remedies before filing suit as required by the Employee Retirement Income Security Act of 1974 ("ERISA"). In support of its motion, MetLife submitted portions of the administrative record, including the long term disability plan, and an affidavit from Matthew Hallford, a MetLife litigation specialist. *See* doc. #s 9-10.

On November 21, 2018, plaintiff filed his opposition to MetLife's motion to dismiss/motion for summary judgment. [doc. # 11]. He argued that the motion was premature because MetLife had not furnished plaintiff or the court with a complete copy of the administrative record. Trahan further argued that he exhausted the administrative appeal requirements. Finally, he asserted that MetLife instituted an invalid internal claim process because it required claimants/beneficiaries to shoulder the financial burden of supplying the plan administrator with copies of records, reports, and medical services.

In conjunction with his opposition brief, plaintiff filed a motion to strike [doc. # 12] the affidavit of Matthew Hallford submitted by MetLife because litigants ordinarily are not permitted to offer evidence outside the four corners of the administrative record.

On November 27, 2018, MetLife filed its reply brief in support of its motion to dismiss/summary judgment. [doc. # 15]. On November 29, 2018, MetLife obtained leave of court to amend/correct its exhibits submitted in support of its motion to dismiss. [doc. #s 14, 16-

18].[1]

MetLife filed its opposition to plaintiff's motion to strike on December 13, 2018. [doc. # 19]. Plaintiff filed his reply brief on December 19, 2018. [doc. # 21].

Trahan filed two additional motions on December 19: 1) a motion to deem [doc. # 23] his reply brief in support of his motion to strike as a supplemental memorandum in opposition to MetLife's motion to dismiss/summary judgment; and 2) a motion to compel [doc. # 22] MetLife to prepare and file a complete administrative record so plaintiff could proceed to the merits of the case.

On January 2, 2019, the court reviewed the record and noted that plaintiff's complaint failed to allege any basis for the court's exercise of subject matter jurisdiction. (Jan. 2, 2019, Order [doc. # 25]). Accordingly, the court granted plaintiff leave to amend his jurisdictionally bereft complaint. *Id*.

On January 10, 2019, plaintiff amended his complaint to invoke the court's federal question jurisdiction, 28 U.S.C. § 1331, on the basis that he was seeking benefits due under the terms of an ERISA disability plan issued by his employer. (Pl. Amend. Compl.). He alternatively asserted that the court enjoyed diversity jurisdiction, 28 U.S.C. § 1332, because the parties were completely diverse, and the amount in controversy exceeded $75,000. *Id*.[2] Plaintiff also "acknowledge[d] that any state claim he might otherwise have has probably been preempted by ERISA, but to the extent that the evidence presented hereafter may show the existence of any

---

[1] Subsequent citations to MetLife's exhibits herein, refer to MetLife's corrected exhibits set forth in Document No. 18.

[2] The court is satisfied that it may exercise subject matter jurisdiction via federal question and/or diversity. 28 U.S.C. §§ 1331 & 1332.

3

non-pre-empted state claim, plaintiff would show that there is supplemental jurisdiction over any such claim under 28 U.S.C. 1367." *Id*.

In his amended complaint, plaintiff conceded that there had been a previous proceeding involving the same parties and related issues before this court, *Trahan v. Metropolitan Life Insurance Co.*, No. 15-2803 (W.D. La.) ("*Trahan I*"). Plaintiff agreed that in *Trahan I*, this court rendered judgment on the merits in MetLife's favor as to his claims under a short term disability plan, and dismissed without prejudice his claims under the long term disability plan. *Id*. Plaintiff then proceeded to incorporate the arguments pertaining to the pending motions into his amended pleading. *Id*.

On January 7, 2019, MetLife filed its opposition [doc. # 26] to plaintiff's motion to compel, in which it argued that, 1) an action for review on an administrative record is exempted from initial disclosure requirements, 2) plaintiff had not issued a formal discovery request to MetLife, and 3) the court has yet to issue its civil case management order requiring MetLife to file a copy of the administrative record. Plaintiff filed his reply brief in support of his motion to compel on January 14, 2019. [doc. # 28]. Therefore, the matter is ripe.

## Analysis

### I. Motion to Dismiss vs. Motion for Summary Judgment

If evidence outside of the pleadings is presented to the court and used in deciding a 12(b)(6) motion, then the court must convert the matter to a motion for summary judgment. Fed.R.Civ.P. 12(d); *Knighton v. Merscorp Inc.*, 304 Fed. Appx. 285, 287 (5th Cir. 2008) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir.1993)). In the matter *sub judice*, MetLife submitted an affidavit from its litigation specialist, Matthew Hallford, whereby

he averred that MetLife never received a request from Trahan for an administrative appeal of its March 28, 2018, claim denial. (Hallford Affidavit). Defendant necessarily relies on this evidence to support its exhaustion argument; therefore, the court must convert the 12(b) motion into a motion for summary judgment. Fed.R.Civ.P. 12(d).

In the event of conversion, Rule 12(d) requires that all parties be afforded a reasonable opportunity to present all material pertinent to a motion for summary judgment. *Id.* Specifically, the notice and hearing requirements of Rules 12(b) and 56(c) of the Federal Rules of Civil Procedure must be adhered to. *Mackey v. Owens*, 1999 WL 423077 (5th Cir. June 2, 1999) (unpubl.).

The court, however, need not give a party "express notice" that a motion to dismiss will be treated as a motion for summary judgment:

> given [Rule 12(d)]'s express declaration that a motion to dismiss shall be treated as a motion for summary judgment where matters outside the pleadings are presented to and not excluded by the court, the simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment.

*Mackey, supra* (internal citation omitted).

Here, however, plaintiff had notice that MetLife's motion could be treated as a motion for summary judgment, in no small part, because MetLife alternatively sought relief under Rule 56. *See Hager v. NationsBank N.A.*, 167 F.3d 245, 247 n.1 (5th Cir.1999) (plaintiff received notice that the court could view defendant's motion as one for summary judgment when defendant filed its motion with an attached affidavit, and the district court did not rule on the motion for over two months). [3]

---

[3] Furthermore, the court always possesses the inherent authority to dismiss an action *sua sponte*, without motion by a defendant. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at

---

1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322, 1995 WL 534901, at *2 (5th Cir. 1995) (unpubl.). A report and recommendation, itself, provides sufficient notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magourik v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

When a movant bears the burden of proof on an issue, it must establish "beyond [doubt] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL

560271 (5th Cir. Dec. 29, 1993) (unpubl.).

### III. Plaintiff Exhausted Available Administrative Remedies

    a)    <u>Law on Exhaustion</u>

The parties agree that the subject long term disability policy (the "Plan") is an employee welfare benefit plan under ERISA, and therefore, it must provide an administrative remedy for persons whose claims for benefits have been denied. 29 U.S.C. § 1133. Because of the availability of an administrative remedy, the Fifth Circuit has adopted "the common law rule that a plaintiff generally must exhaust administrative remedies afforded by an ERISA plan before suing to obtain benefits wrongfully denied." *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir. 1995) (emphasis added) (citing *Denton v. First Nat'l Bank of Waco, Tex.*, 765 F.2d 1295, 1300-03 (5th Cir. 1985)).[4] The exhaustion requirement presupposes that the basis for the lawsuit stems from some action of an ERISA plan, and that the plan is capable of providing the relief sought by plaintiff. *Id*. (citations omitted).

A plaintiff must exhaust an administrative remedy available under an ERISA plan, even if that remedy is phrased permissively. *Long v. Aetna Life Ins. Co.*, Civ Action No. 14-403, 2014 WL 4072026 (E.D. La. Aug. 18, 2014) (citations omitted). Moreover, "plaintiffs seeking ERISA plan benefits are bound by the plan's administrative procedures and must use them before filing suit even if they have no notice of what those procedures are." *Bourgeois*, 215 F.3d at 480

---

[4] The exhaustion requirement seeks to give effect to Congress's preference that "ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than *de novo*." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corporations*, 215 F.3d 475, 479 (5th Cir. 2000) (citation omitted). Exhaustion, however, is not jurisdictional. *Hager, supra*.

(citation omitted).

  b) <u>Plan Appeal Provisions and the Exhaustion Timeline</u>

Here, the Plan requires a claimant to file an initial claim for disability. (SPD-LTD-000057). Thereafter, MetLife will review the claim and notify the claimant of its decision. (SPD-LTD-000069). The Plan further provides that if MetLife denies the claim, then the claimant may appeal the decision. The claimant must submit the appeal to MetLife within 180 days of receiving MetLife's decision. "Appeals must be in writing and must include at least the following information:

- Name of Employee
- Name of the Plan
- Reference to the initial decision
- An explanation why [the claimant is] appealing the initial determination."

(SPD-LTD-000069-70).

After MetLife receives the written appeal request, it will conduct a full and fair review of the claim. *Id*. In addition, "[i]f MetLife denies the claim on appeal, MetLife will send [the claimant] a final written decision that states the reason(s) why the claim [the claimant] appealed is being denied and references any specific Plan provision(s) on which the denial is based." *Id*.

Following *Trahan I*'s dismissal of plaintiff's claim for long-term disability benefits for failure to file an administrative claim in the first instance, Trahan finally completed and submitted a long-term disability claim to MetLife on March 28, 2017. (MSJ, Exh. D).

On May 1, 2017, MetLife wrote to Trahan and advised him that his claim was subject to a preexisting condition investigation. Accordingly, MetLife asked Trahan to provide copies of his

9

medical records for the period from August 1 to October 31, 2013.  (May 1, 2017, Letter; MSJ, Exh. E).

On August 9, 2017, MetLife notified Trahan that it had closed his claim for benefits for failure to submit records.  (Aug. 9, 2017, Letter; MSJ Exh. F).  The letter documented repeated efforts to obtain the necessary information from Trahan's attorney – all to no avail.  *Id*.  The letter further advised Trahan that if he wished to appeal the denial of the claim he could do so by sending a written request to MetLife within180 days.  *Id*.

On August 28, 2017, plaintiff, via counsel, sent a cover letter to MetLife with attached medical records.  (Aug. 28, 2017, Letter; MSJ Exh. G).

On September 21, 2017, MetLife wrote to plaintiff informing him that his claim for benefits had been denied because the medical records did not support his claim.  (Sept. 21, 2017, Letter, Exh. H).  MetLife noted that it did not have medical records from a doctor establishing that Trahan was disabled from May 1 to December 8, 2015.  *Id*.  It further advised Trahan that it was reviewing his application for a preexisting condition.  *Id*.  The letter also explained to Trahan that because his claim was denied in whole or in part, he could *appeal* the decision by sending a request to MetLife within 180 days.  *Id*.

On March 20, 2018, plaintiff's attorney wrote a letter to MetLife "to appeal the decision by letter dated September 21, 2017."  (March 20, 2018, Letter; MSJ, Exh. I).  In the appeal letter, counsel noted, *inter alia*, that he had enclosed additional records.  *Id*.

On March 28, 2018, Metlife wrote to Trahan advising him that it had been unable to approve his claim because he had been treated during a preexisting period from August 1 to October 2015.  (March 28, 2018, Letter; MSJ, Exh. J).  The letter noted that MetLife had issued

Trahan a denial letter on September 21, 2017, and that it had received Trahan's *appeal* via his attorney's March 20, 2018, letter. *Id*. The letter advised Trahan that he had a right to appeal the decision by submitting a request in writing within 180 days from the date of the letter, to include the reasons why he believed that the claim was improperly denied, and any additional information. *Id*.

On July 17, 2018, Trahan's attorney wrote to MetLife and acknowledged receipt of the March 28, 2018, letter, but confessed to being a "bit confus[ed]" by it. (July 17, 2018, Letter; MSJ, Exh. K). He questioned whether MetLife had information indicating that his client had been treated between January 28, 2014, to May 1, 2015, and December 8, 2015, ongoing. *Id*. He further pointed out that, as he read the Plan, the certificate date was May 2014, and therefore, the fact that his client sought treatment from medical providers on October 30, 2013, was more than three months prior to the Plan's effective date, i.e., outside the period for the preexisting condition exclusion. *Id*. Plaintiff's counsel asked MetLife to explain this apparent discrepancy. *Id*.

On July 30, 2018, MetLife replied to counsel's July 18, 2018, letter to explain that the effective date for Trahan's long term disability insurance was November 1, 2013, which it had confirmed with Trahan's employer. (July 30, 2018, Letter; MSJ, Exh. L). Because Trahan's employment with the plan sponsor did not last a whole year, he was subject to the Plan's preexisting condition exclusion which focused upon whether there was any medical treatment during the three months before the November 1, 2013, effective date of his insurance, i.e., for the period from August 1 to October 31, 2013. *Id*. The medical records confirmed that Trahan was subject to the preexisting condition exclusion, and therefore, Metlife denied his claim. *Id*.

Metlife added that "[i]f you do not agree with this information please review the March 28, 2018 denial letter for appeal information." *Id*.

There is no indication that Trahan further appealed MetLife's determination; rather, he filed the instant suit on September 25, 2018.

c)   Discussion

The present dispute stems from the parties' conflicting characterizations of MetLife's several determinations, and the effect of plaintiff's associated correspondence. It is manifest that MetLife issued three or more decisions on Trahan's claim for benefits. Initially, it denied (or closed) Trahan's claim because he failed to submit supporting medical records. (Aug. 9, 2017, Letter; MSJ Exh. F). In so doing, MetLife explained to plaintiff how he could appeal the decision, and that if he intended to appeal, he needed to submit the medical records from the relevant period. *Id*. (MSJ, Exh. F). In response to this initial denial, Trahan submitted the missing medical records, via his August 28, 2017, letter. (MSJ, Exh. G). In his letter, plaintiff's counsel identified the plaintiff, the employer, the type of coverage, and the claim number. *Id*. He also referenced the attached medical records, which MetLife asked him to submit pursuant to his "appeal." *Id*.

MetLife next denied plaintiff's claim on September 21, 2017, because the submitted medical records did not support his disability claim. (Sept. 21, 2017, Letter; MSJ, Exh. H). MetLife explained that if Trahan intended to appeal the denial, then he needed to transmit "an appeal intent letter" with information from specified medical providers and pay stubs from his employment at AutoZone. *Id*. In response to this second denial, Trahan submitted additional medical records, and explained that he did not know whether he received any paycheck stubs

12

from AutoZone. (March 20, 2018, Letter; MSJ, Exh. I). Plaintiff's counsel explicitly stated that the letter constituted an "appeal" of MetLife's latest denial, and identified the plaintiff, the employer, and the claim number. *Id*.

MetLife denied plaintiff's claim for the third time on March 28, 2018, because of the preexisting condition exclusion. (March 28, 2018, Letter; MSJ, Exh. J). In so doing, MetLife acknowledged plaintiff's March 20, 2018, "appeal," and explained to him how he could appeal the denial, by sending, *inter alia*, medical records to verify that he was *not* seen on October 30, 2013, as indicated by the medical records already in MetLife's possession. *Id*.

The court finds that, at minimum, plaintiff unequivocally appealed MetLife's September 21, 2017, determination. In its correspondence, MetLife even acknowledged plaintiff's "appeal." *See Whittaker v. BellSouth Telecommunications, Inc.*, 206 F.3d 532, 536 (5th Cir.2000) (claimant exhausted administrative remedies where, *inter alia*, plan administrator informed claimant that his "appeal" was being processed). Nothing in the Plan indicates that the administrative remedy process required Trahan to perfect more than one appeal. Moreover, there is nothing in the Plan that requires the claimant to sequentially appeal MetLife's determinations each time MetLife provides a new basis for denying the claim.

Even if the Plan *had* contemplated such a requirement, ERISA's implementing regulations prohibit more than **two** mandatory appeals of an adverse benefit determination. 29 C.F.R. § 2560.503-1(c)(2). Here, Trahan also appealed MetLife's initial August 9, 2017, denial. *See* discussion, *supra*. Therefore, his March 20, 2018, appeal represented his second appeal of a MetLife decision sequentially denying his claim. Under the regulations, he was not required to appeal further. Moreover, although a plan may provide for additional voluntary levels of appeal,

the plan waives its right to assert that a claimant failed to exhaust administrative remedies if the claimant does not avail himself of these additional appeal opportunities. 29 C.F.R. § 2560.503-1(c)(3).

In the further alternative, the court finds that Trahan was not required to appeal MetLife's March 28, 2018, denial of his earlier appeal(s) because the March 28, 2018, decision stated that if he intended to appeal, he needed to submit an appeal letter *and* medical records to verify that he was *not* seen on October 30, 2013, by certain doctors. (MSJ, Exh. J). Clearly, Trahan did not possess documents negativing the existence of the October 30, 2013, visit, and therefore, could not avail himself of the illusory "appeal" opportunity offered by MetLife. *See Hager, supra* (further "appeal" offered by Appeal Denial Letter for submission of additional evidence would not have provided an opportunity for review of prior decision where claimant did not have any additional evidence or documentation). Instead, Trahan's attorney essentially argued in his July 17, 2018, letter that the preexisting condition provision was inapplicable because of his impression that the period was measured from the certificate of insurance date for the plan policy as a whole, rather than from the date that the policy became effective for Trahan. (MSJ, Exh. K). Insofar as this letter and argument may be read as satisfying the requirements for an appeal, MetLife rejected it. (MSJ, Exh. L).[5]

Accordingly, the court finds that plaintiff exhausted available administrative remedies

---

[5] As emphasized by defendant, the Fifth Circuit has held that a claimant's letter conveying his "intent" to appeal an administrator's decision does not represent an actual appeal. *See Holmes v. Proctor & Gamble Disability Benefit Plan*, 228 Fed. Appx. 377, 378 (5th Cir.2007); *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018 (5th Cir.2009). Here, in contrast, Trahan's various appeals included additional evidence and/or argument.

under the Plan.

### IV. Plaintiffs' Motions are Moot or Unnecessary

In light of the undersigned's recommended disposition of MetLife's motion to dismiss, plaintiff's motions are moot. Once the court issues its civil case management order, MetLife will be obliged to produce a copy of the administrative record (within specified delays).

### Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted, or alternatively, motion for summary judgment [doc. # 5] filed by defendant Metropolitan Life Insurance Company be DENIED. Furthermore,

IT IS ORDERED that plaintiffs' motions to strike [doc. #12], to compel [doc. # 22], and to deem his reply brief also to be a supplemental opposition memorandum [doc. 23] are DENIED, as moot and/or unnecessary at this time.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 23rd day of January 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE